**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

MONDY DAVID,

Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,

Defendant.

Civil Action No.: ______________

**JURY TRIAL DEMANDED**

---

## I. COMPLAINT

Mondy David is a healthcare professional living in Mattapan, Massachusetts, working to rebuild a financial life that debt and hardship have eroded over recent years. Like millions of Americans, she relies on the accuracy of her credit report to access the ordinary tools of economic life: a car loan to get to work, an apartment lease, the ability to refinance crushing student debt. When she pulled her Experian credit report on July 1, 2025, she was not looking for perfection. She was looking for truth. What she found instead was something far more troubling: a file riddled with internal contradictions, impossible numbers, data withheld wholesale from her view, and the same debts reported twice by different collectors as though Experian had no obligation to check.

The moment the report loaded, the scope of the problem became clear. Account after account showed balances exceeding the credit limits that were supposed to cap them, a mathematical

impossibility that no competent system should allow to reach a consumer's file. Her eight federal student loan accounts, each currently in active deferment, displayed sweeping gaps in their payment history where Experian simply recorded no data, month after month, year after year. More than 150 data fields across her report were blank or marked as having no data for the period. The file Experian handed her was incomplete by any fair reading of that word.

The problem did not stop at missing fields. Across at least four pairs of accounts, Experian reported the same underlying debt twice: once in the charged-off tradeline of the original creditor, and again in the collection account of the debt buyer that purchased the debt. Experian knew, or should have known, that the original creditor had sold each of these debts because it said so itself in the account comments. Yet it allowed both entries to remain, creating the false impression that Mondy David owed twice what she actually did on each of those obligations. This is not a data-entry error. It is the predictable result of a system that processes reinvestigation disputes with no meaningful review.

The Fair Credit Reporting Act exists precisely because credit reports carry enormous power over people's lives, and because the agencies that compile them have every financial incentive to serve the creditors who pay for access rather than the consumers whose data they hold. Congress enacted 15 U.S.C. sections 1681e(b), 1681g, and 1681i to impose concrete duties on Experian: maintain reasonable accuracy procedures, disclose to consumers all the information in their own file, and conduct genuine reinvestigations when disputes are raised. For more than twenty-five years, the FTC has warned Experian and its peers that withholding data fields from a consumer's own file disclosure while transmitting that same data to third-party creditors violates the statute.

Experian has continued the practice regardless. That is not carelessness. It is a policy choice, and it is a willful one.

Plaintiff Mondy David brings this action to hold Experian accountable for the concrete harm its practices have caused her: the inability to verify the accuracy of derogatory notations on her own file, the distress of discovering that impossible balances have been transmitted to the six creditors who pulled her hard inquiries in recent years, the impairment of her ability to challenge what she could not see, and the ongoing damage to her creditworthiness that flows from a file that Experian refuses to correct. She seeks actual damages, statutory damages, punitive damages, and injunctive relief requiring Experian to provide her with a complete and accurate file disclosure.

## II. JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over this action pursuant to 15 U.S.C. section 1681p and 28 U.S.C. section 1331.

2. Venue is proper in this district pursuant to 28 U.S.C. section 1391(b) because Plaintiff resides in this district and a substantial part of the events giving rise to her claims occurred in this district.

## III. PARTIES

3. Plaintiff Mondy David is a natural person residing at 820 River Street, Mattapan, Massachusetts 02126. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. section 1681a(c).

4. Defendant Experian Information Solutions, Inc. is an Ohio corporation with its principal place of business at 475 Anton Boulevard, Costa Mesa, California 92626. Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. section 1681a(f) and is a nationwide consumer reporting agency as described in 15 U.S.C. section 1681a(p). Defendant's registered agent in the State of Massachusetts may be located through the Massachusetts Secretary of State's corporate database.

## IV. FACTUAL ALLEGATIONS

### A. The Credit Report at Issue

5. On July 1, 2025, Plaintiff obtained her consumer file disclosure from Experian, bearing Report Number 1829-9461-90 (hereinafter the "Report"). The Report is attached hereto as Exhibit A.

6. The Report reflects 34 account entries, 0 public records, and 6 hard inquiries.

7. Plaintiff obtained the Report directly from Experian for purposes of reviewing the accuracy of her consumer file disclosure, as is her right under 15 U.S.C. section 1681g(a).

### B. Incomplete File Disclosure -- Missing and Withheld Data Fields

8. Section 1681g(a)(1) requires Experian to clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request. The FTC Advisory Opinion to Katrina Darcy, dated June 30, 2000 (hereinafter "Darcy Opinion"), placed all nationwide consumer reporting agencies on specific notice that withholding data fields

from a consumer's own file disclosure while providing that same data to third-party creditors violates this statutory requirement. A copy of the Darcy Opinion is attached hereto as Exhibit B.

9. The Report Experian provided to Plaintiff contains in excess of 150 blank or missing data fields, the scope of which is set forth in the Blank and Missing Field Inventory attached hereto as Exhibit C.

10. The eight accounts reported by DEPT OF ED/AIDVANTAGE, opened between August 2013 and September 2019 and bearing Account Number 922044XXXXXXXXX (various), each display extensive payment history gaps in which Experian recorded "No data for this period" (ND) across multiple months spanning 2019 through 2025. Specifically:

11. The DEPT OF ED/AIDVANTAGE account opened August 2, 2013, with a current balance of $68,932, displays ND cells in January through April 2025 and August through December 2024, among other periods.

12. The DEPT OF ED/AIDVANTAGE account opened January 8, 2014, with a current balance of $12,134, displays ND cells across the same periods as the foregoing account.

13. The DEPT OF ED/AIDVANTAGE account opened August 21, 2014, with a current balance of $1,532, displays ND cells in January through April 2025 and August through December 2024, among other periods.

14. The DEPT OF ED/AIDVANTAGE account opened January 25, 2016, with a current balance of $17,384, displays ND cells in January through April 2025 and August through December 2024, among other periods, extending back to 2018.

15. The DEPT OF ED/AIDVANTAGE account opened September 23, 2016, with a current balance of $16,564, displays ND cells in January through April 2025 and August through December 2024, among other periods, extending back to 2018.

16. The DEPT OF ED/AIDVANTAGE account opened September 21, 2017, with a current balance of $23,973, displays ND cells in January through April 2025 and August through December 2024, among other periods, extending back to 2018.

17. The DEPT OF ED/AIDVANTAGE account opened September 18, 2018, with a current balance of $22,978, displays ND cells in January through April 2025 and August through December 2024, among other periods.

18. The DEPT OF ED/AIDVANTAGE account opened September 16, 2019, with a current balance of $6,039, displays ND cells in January through April 2025 and August through December 2024, among other periods.

19. Across these eight student loan accounts alone, Experian's file disclosure records no data in more than 80 individual payment history cells, depriving Plaintiff of the ability to verify whether those periods have been accurately characterized and whether any derogatory notation, if applicable, was properly supported.

20. Additionally, across the charged-off and collection accounts, Recent Payment fields, Monthly Payment fields, and Paid columns are systematically blank, preventing Plaintiff from reconciling reported delinquency periods with actual payment activity.

21. The identical pattern of blank ND cells appearing across all eight student loan accounts in the same calendar months confirms that these omissions result from a uniform, systemic data policy rather than isolated error. On information and belief, every consumer whose

Experian file contains student loan accounts serviced by Aidvantage receives the same categories of blank payment history fields in her consumer disclosure.

22. Because Plaintiff cannot see the underlying data fields for the periods marked ND, she is unable to determine whether the status codes Experian reports for those periods are accurate, in violation of the Alexander v. Equifax standard that a file disclosure must be sufficiently clear that the consumer can determine whether it is accurate. Alexander v. Equifax, 2018 WL 3025939 (D. Nev. 2018).

**C. Per Se Inaccuracies -- Balance Exceeds Credit Limit**

23. A fundamental function of any competent consumer reporting system is to verify that the balance reported on a revolving account does not exceed the credit limit assigned to that account. A balance exceeding the stated credit limit is a per se inaccuracy under 15 U.S.C. section 1681e(b) because no amount owed can exceed the limit that defines the account, and such a reporting misleads prospective creditors, insurers, and other users of the report into believing the consumer has violated the terms of the account. Gorman v. Wolpoff and Abramson, LLP, 584 F.3d 1147 (9th Cir. 2009).

24. The Report contains the following accounts on which the Highest Balance or current Balance reported by Experian exceeds the Credit Limit reported on the same entry:

25. ADS/COMENITY/BBBABY, Account Number 532104XXXXXXXXXX: Highest Balance reported as $1,728 against a Credit Limit of $750, an excess of $978.

26. ADS/COMENITY/SEPHORA (opened March 24, 2022), Account Number 402241XXXXXXXXXX: Highest Balance reported as $998 against a Credit Limit of $400, an excess of $598.

27. ADS/COMENITY/ULTA (opened February 13, 2022), Account Number 578097XXXXXXXXXX: Highest Balance reported as $411 against a Credit Limit of $100, an excess of $311.

28. BARCLAYS BANK DELAWARE, Account Number 000505XXXXXXXXX: Balance reported as $2,804 against a Credit Limit of $2,200, an excess of $604.

29. CAPITAL ONE, Account Number 400344XXXXXXXXXX: Balance reported as $6,537 against a Credit Limit of $5,500, an excess of $1,037.

30. CAPITAL ONE, Account Number 517805XXXXXXXXXX: Balance reported as $1,281 against a Credit Limit of $1,000, an excess of $281.

31. COMENITYCAPITALBANK/THE WILLIAM, Account Number 778840XXXXXXXXXX: Highest Balance reported as $692 against a Credit Limit of $100, an excess of $592.

32. DISCOVER CARD, Account Number 601120XXXXXXXXXX: Balance reported as $20,773 against a Credit Limit of $17,600, an excess of $3,173.

33. NORDSTROM/TD BANK USA, Account Number 447043XXXXXXXXXX: Highest Balance reported as $1,925 against a Credit Limit of $1,500, an excess of $425.

34. SYNCB/AMAZON, Account Number 604578XXXXXXXXXX: Highest Balance reported as $1,859 against a Credit Limit of $810, an excess of $1,049.

35. SYNCB/TJX COS DC, Account Number 524366XXXXXXXXXX: Highest Balance reported as $1,253 against a Credit Limit of $790, an excess of $463.

36. SYNCB/VNMO, Account Number 400899XXXXXXXXXX: Highest Balance reported as $955 against a Credit Limit of $670, an excess of $285.

37. THE HOME DEPOT/CITIBANK, Account Number 603532XXXXXXXXXX: Highest Balance reported as $207 against a Credit Limit of $200, an excess of $7.

38. Each of the foregoing balance-exceeds-limit figures represents a per se inaccuracy that a basic automated comparison of reported balance against reported credit limit would have identified and prevented before publication. The failure to implement such a check is objectively unreasonable under Safeco Insurance Company of America v. Burr, 551 U.S. 47, 69 (2007).

**D. Materially Misleading Reporting -- Dual Reporting of Sold Debts**

39. When a charged-off account is sold to a debt buyer, any accurate consumer reporting system must ensure that the same underlying obligation is not reported simultaneously as a charged-off tradeline by the original creditor and as an active collection account by the purchaser. Reporting both entries simultaneously overstates the consumer's total indebtedness, creates the false impression of two separate obligations, and causes prospective creditors to conclude the consumer is a worse credit risk than the facts support. Pittman v. Experian Information Solutions, Inc., 901 F.3d 619 (6th Cir. 2018).

40. The Report contains the comments "Purchased by another lender" on each of the following charged-off accounts, confirming that Experian was on specific notice that each debt had been sold. Nevertheless, Experian simultaneously reports both the original charged-off entry and the collection account of the debt buyer, as set forth below.

41. ADS/COMENITY/BBBABY, Account Number 532104XXXXXXXXXX, charged off at $1,333, is reported with the comment "Purchased by another lender." The same debt is simultaneously reported as a collection account by RESURGENT/LVNV FUNDING,

Account Number 005321XXXXXXXXXXXX, with an Original Creditor notation of "COMENITY CAPITAL BANK BUYBUY B" and a balance of $1,333. Experian thus reports a single $1,333 obligation as two separate entries on Plaintiff's file, causing any reader of the report to attribute to Plaintiff $2,666 in liability where only $1,333 exists.

42. ADS/COMENITY/SEPHORA (opened March 24, 2022), Account Number 402241XXXXXXXXXX, charged off at $998, is reported with the comment "Purchased by another lender." The same debt is simultaneously reported as a collection account by MIDLAND CREDIT MANAGEMEN, Account Number 32821XXXX, with an Original Creditor notation of "COMENITY CAPITAL BANK" and a balance of $998. Experian thus reports a single $998 obligation as two separate entries.

43. ADS/COMENITY/ULTA (opened February 13, 2022), Account Number 578097XXXXXXXXXX, charged off at $411, is reported with the comment "Purchased by another lender." The same debt is simultaneously reported as a collection account by RESURGENT/LVNV FUNDING, Account Number 005780XXXXXXXXXXXX, with an Original Creditor notation of "COMENITY CAPITAL BANK ULTA BEA" and a balance of $411. Experian thus reports a single $411 obligation as two separate entries.

44. BARCLAYS BANK DELAWARE, Account Number 000505XXXXXXXXX, charged off at $2,000, is reported with the comments "Purchased by another lender" and Historical Information noting the debt was sold to PORTFOLIO RECOVERY ASSOC. The same debt is simultaneously reported as a collection account by PORTFOLIO RECOVERY ASSOCIATES, Account Number 537811XXXXXXXXXX, with an Original Creditor notation of "BARCLAYS BANK DELAWARE" and a balance of $2,804. Experian thus reports a single obligation as two separate entries.

45. These dual-reporting entries are materially misleading under 15 U.S.C. section 1681e(b). They cause any user of the report to attribute to Plaintiff thousands of dollars of additional indebtedness that does not reflect her actual financial obligations.

**E. Dispute History and Reinvestigation Failures**

46. Prior to the filing of this action, Plaintiff disputed multiple inaccurate entries in her Experian consumer file. The Report confirms that reinvestigations were conducted and notations of consumer disputes were placed on the following accounts, among others: ADS/COMENITY/BBBABY (reinvestigation June 2025); BARCLAYS BANK DELAWARE (reinvestigation June 2025, outcome noted as "consumer disagrees"); CAPITAL ONE Account Number 517805XXXXXXXXXX (dispute notation "ITEM IN DISPUTE BY CONSUMER"; reinvestigation June 2025); MACYS/CBNA (dispute notation present; reinvestigation July 2017); MIDLAND CREDIT MANAGEMEN Account Number 32821XXXX (dispute notation present; reinvestigation April 2025); RESURGENT/LVNV FUNDING Account Number 005321XXXXXXXXXXXX (dispute notation present; reinvestigation December 2024); RESURGENT/LVNV FUNDING Account Number 005780XXXXXXXXXXXX (dispute notation present; reinvestigation June 2025); RESURGENT/LVNV FUNDING Account Number 444796XXXXXXXXXX (dispute notation present; reinvestigation November 2024); and RESURGENT/LVNV FUNDING Account Number 546645XXXXXXXXXX (dispute notation present; reinvestigation November 2024).

47. Despite these reinvestigations, the per se inaccuracies described in Section C above remain on the Report. Balances continue to be reported in excess of stated credit limits.

The dual-reporting entries described in Section D above remain on the Report. The ND data gaps described in Section B above remain on the Report.

48. In particular, the BARCLAYS BANK DELAWARE entry carries the notation "Completed investigation of FCRA dispute - consumer disagrees," confirming that Experian closed its reinvestigation over Plaintiff's objection without correcting the per se inaccuracy of a reported balance of $2,804 against a credit limit of $2,200.

49. A reinvestigation that rubber-stamps a data furnisher's unverified response without independently assessing internally contradictory data does not satisfy 15 U.S.C. section 1681i(a)(1)(A). Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997). Experian's reinvestigation of each disputed account was inadequate as a matter of law where per se inaccuracies visible on the face of the report survived reinvestigation.

**F. Third-Party Dissemination**

50. Experian transmitted Plaintiff's consumer file to third parties, as evidenced by the following hard inquiries recorded on the Report:

51. On August 7, 2024, Defendant transmitted Plaintiff's consumer report to NORDSTROM/TD BANK USA, as evidenced by the hard inquiry recorded on Plaintiff's file disclosure.

52. On June 5, 2023, Defendant transmitted Plaintiff's consumer report to CAP ONE AUTO FIN VIA DEALER, as evidenced by the hard inquiry recorded on Plaintiff's file disclosure.

53. On June 5, 2023, Defendant transmitted Plaintiff's consumer report to CARMAX, as evidenced by the hard inquiry recorded on Plaintiff's file disclosure.

54. On June 5, 2023, Defendant transmitted Plaintiffs consumer report to EXETER FINANCE LLC/WCG, as evidenced by the hard inquiry recorded on Plaintiffs file disclosure.

55. On June 5, 2023, Defendant transmitted Plaintiffs consumer report to NOWCOM/WESTLAKE FINANCIA, as evidenced by the hard inquiry recorded on Plaintiffs file disclosure.

56. On June 5, 2023, Defendant transmitted Plaintiffs consumer report to SANTANDER CONSUMER USA, as evidenced by the hard inquiry recorded on Plaintiffs file disclosure.

57. Each of the foregoing transmissions included the per se inaccurate balance figures, the materially misleading dual-reporting entries, and the incomplete payment history fields described herein, causing concrete harm to Plaintiffs creditworthiness in the eyes of each recipient. TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021).

**G. Willfulness**

58. Experian's violations were willful within the meaning of 15 U.S.C. section 1681n and Safeco Insurance Company of America v. Burr, 551 U.S. 47, 69 (2007), which holds that a defendant acts willfully when it takes a position that is either knowing or objectively unreasonable with a risk substantially greater than mere carelessness.

59. As to the incomplete file disclosure: The FTC Darcy Opinion, issued June 30, 2000, placed all nationwide consumer reporting agencies on specific notice more than twenty-five years ago that withholding data fields from a consumer's own file disclosure while providing that same data to third-party creditors violates 15 U.S.C. section 1681g(a)(1).

Experian's continued operation of a disclosure policy that systematically omits payment history fields across every student loan account is objectively unreasonable under Safeco.

60. As to the per se balance inaccuracies: The failure to implement any automated comparison of reported balance against stated credit limit before publishing a consumer report is objectively unreasonable under Safeco. Such a check requires no human judgment and no specialized knowledge; it is a basic arithmetic comparison that any competent data-processing system would perform before transmitting account data to third parties. The identical pattern of balance-exceeds-limit figures appearing across thirteen separate accounts on the same report confirms that no such check exists.

61. As to the dual-reporting of sold debts: Experian's own data includes the comment "Purchased by another lender" on each original charged-off account, meaning Experian possessed actual notice that each debt had been sold at the time it was simultaneously reporting both the original tradeline and the collection account. Continuing to publish both entries after receiving that notice, and after receiving Plaintiff's disputes, is objectively unreasonable.

62. Experian's continued operation of practices materially identical to those described in a pending federal enforcement action filed by its primary regulator confirms willful disregard of known legal obligations under Safeco, 551 U.S. at 69. CFPB v. Experian Information Solutions, Inc., Case No. 8:25-cv-00024 (C.D. Cal. Jan. 7, 2025) (pending, not adjudicated).

63. The systemic, uniform pattern of violations across all accounts on the Report is inconsistent with inadvertent error and consistent only with deliberate policy. Williams v. First Advantage LNS Screening Solutions, Inc., 947 F.3d 735 (11th Cir. 2020).

**H. Actual Damages**

64. As a direct and proximate result of Experian's violations, Plaintiff has suffered actual damages including: (a) emotional distress caused by discovering that her consumer file contained impossible balances, missing data, and dual-reporting of the same debts; (b) impaired creditworthiness resulting from the transmission to six creditors of a file containing per se inaccuracies and materially misleading entries; (c) lost credit opportunities, including the inability to obtain favorable financing for a vehicle, as evidenced by the five auto-related hard inquiries from June 2023, none of which resulted in credit being extended on terms Plaintiff could accept; (d) the inability to verify the accuracy of derogatory notations on her own file because the underlying payment data was withheld from her disclosure; and (e) time and resources expended in reviewing, disputing, and attempting to correct the inaccuracies in her file.

## V. CAUSES OF ACTION

### COUNT I

### Violation of 15 U.S.C. Section 1681g(a)(1)

### Failure to Clearly and Accurately Disclose All Information in Plaintiff's File

65. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

66. Section 1681g(a)(1) of the FCRA requires that every consumer reporting agency, upon request, clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request.

67. Experian violated section 1681g(a)(1) by providing Plaintiff with a file disclosure dated July 1, 2025, Report Number 1829-9461-90, that omitted in excess of 150 data fields across 34 accounts, including the payment history cells described in Paragraphs 9 through 22 above.

68. The eight DEPT OF ED/AIDVANTAGE accounts, carrying total current balances exceeding $169,000, each contain multiple months across 2019 through 2025 in which Experian recorded no payment history data. These gaps render Plaintiff unable to verify whether the status designations for those periods are accurate and deny her the information she is entitled to by statute.

69. This violation was willful for the reasons set forth in Paragraphs 64 through 69 above, including Experian's receipt of the FTC Darcy Opinion more than twenty-five years ago placing it on specific notice that such omissions violate section 1681g(a)(1).

70. As a result of Experian's willful violation of section 1681g(a)(1), Plaintiff is entitled to actual damages pursuant to 15 U.S.C. section 1681n(a)(1), statutory damages of not less than $100 and not more than $1,000 per violation pursuant to 15 U.S.C. section 1681n(a)(1)(A), punitive damages pursuant to 15 U.S.C. section 1681n(a)(2), and costs of this action pursuant to 15 U.S.C. section 1681n(a)(3).

## **COUNT II**

## **Violation of 15 U.S.C. Section 1681e(b)**

**Per Se Inaccuracy -- Balances Exceeding Stated Credit Limits**

71. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

72. Section 1681e(b) of the FCRA requires that whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

73. Experian violated section 1681e(b) by preparing and transmitting consumer reports containing the thirteen per se inaccurate entries described in Paragraphs 23 through 37 above, in which reported balances or highest balances exceed the stated credit limits on the same account entries.

74. These per se inaccuracies are not susceptible to furnisher verification because no amount owed on a revolving credit account can lawfully exceed the credit limit assigned to that account. Any competent credit reporting system would compare balance against credit limit before publishing account data. The failure to implement such a comparison is not a reasonable procedure and does not satisfy the maximum possible accuracy standard of section 1681e(b).

75. Experian transmitted reports containing these inaccuracies to NORDSTROM/TD BANK USA on August 7, 2024, and to CAP ONE AUTO FIN VIA DEALER, CARMAX, EXETER FINANCE LLC/WCG, NOWCOM/WESTLAKE FINANCIA, and SANTANDER CONSUMER USA on June 5, 2023, causing Plaintiff concrete harm each time.

76. These violations were willful for the reasons set forth in Paragraphs 64 through 69 above.

77. As a result of Experian's willful violations of section 1681e(b), Plaintiff is entitled to actual damages pursuant to 15 U.S.C. section 1681n(a)(1), statutory damages of not less than $100 and not more than $1,000 per willful violation pursuant to 15 U.S.C. section 1681n(a)(1)(A), punitive damages pursuant to 15 U.S.C. section 1681n(a)(2), and costs of this action pursuant to 15 U.S.C. section 1681n(a)(3). In the alternative, if any violation is found not to be willful, Plaintiff is entitled to actual damages and costs pursuant to 15 U.S.C. section 1681o.

## COUNT III

## Violation of 15 U.S.C. Section 1681e(b)

## Materially Misleading Reporting -- Dual Reporting of Sold Debts

78. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

79. Section 1681e(b) prohibits not only technically false information but also the reporting of information that is technically accurate but materially misleading to a reasonable reader of the consumer report. Gorman v. Wolpoff and Abramson, LLP, 584 F.3d 1147, 1163 (9th Cir. 2009).

80. Experian violated section 1681e(b) by simultaneously reporting each of the four pairs of accounts described in Paragraphs 41 through 49 above: (a) ADS/COMENITY/BBBABY charged off at $1,333, together with RESURGENT/LVNV FUNDING collecting $1,333 on the same debt; (b) ADS/COMENITY/SEPHORA charged off at $998, together with MIDLAND CREDIT MANAGEMEN collecting $998 on the same debt; (c) ADS/COMENITY/ULTA charged off at $411, together with RESURGENT/LVNV

FUNDING collecting $411 on the same debt; and (d) BARCLAYS BANK DELAWARE charged off with a sold notation to PORTFOLIO RECOVERY ASSOC., together with PORTFOLIO RECOVERY ASSOCIATES collecting $2,804 on the same debt. Pittman v. Experian Information Solutions, Inc., 901 F.3d 619 (6th Cir. 2018).

81. This dual-reporting is materially misleading because a reasonable prospective creditor reviewing the Report would attribute to Plaintiff two separate obligations for each of these debt pairs, when in fact only one obligation exists for each. Experian possessed affirmative notice of each sale by virtue of the "Purchased by another lender" notation it placed on each original charged-off tradeline.

82. These violations were willful for the reasons set forth in Paragraphs 64 through 69 above.

83. As a result of Experian's willful violations of section 1681e(b), Plaintiff is entitled to actual damages pursuant to 15 U.S.C. section 1681n(a)(1), statutory damages of not less than $100 and not more than $1,000 per willful violation pursuant to 15 U.S.C. section 1681n(a)(1)(A), punitive damages pursuant to 15 U.S.C. section 1681n(a)(2), and costs of this action pursuant to 15 U.S.C. section 1681n(a)(3). In the alternative, if any violation is found not to be willful, Plaintiff is entitled to actual damages and costs pursuant to 15 U.S.C. section 1681o.

## COUNT IV

## Violation of 15 U.S.C. Section 1681i(a)(1)(A)

## Failure to Conduct a Reasonable Reinvestigation

84. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

85. Section 1681i(a)(1)(A) requires that, upon receiving notice of a consumer's dispute regarding the completeness or accuracy of any item of information contained in a consumer's file, the consumer reporting agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate.

86. Plaintiff disputed multiple inaccurate entries in her Experian file, including but not limited to the accounts bearing dispute notations described in Paragraph 50 above.

87. Notwithstanding those disputes, Experian's reinvestigations failed to correct the per se inaccuracies and dual-reporting entries described herein. The BARCLAYS BANK DELAWARE account, for which Experian's reinvestigation result is documented on the face of the Report as "Completed investigation of FCRA dispute - consumer disagrees," continues to report a balance of $2,804 against a credit limit of $2,200 -- a per se inaccuracy that Experian's reinvestigation process failed to identify and correct.

88. A consumer reporting agency that merely forwards a dispute to the furnisher and accepts the furnisher's unverified response, without independently assessing internally contradictory data visible on the face of the report, does not conduct a reasonable reinvestigation within the meaning of section 1681i(a)(1)(A). Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997); Ghazaryan v. Equifax Information Services, LLC, 740 F. App'x 157 (9th Cir. 2018).

89. These violations were willful for the reasons set forth in Paragraphs 64 through 69 above.

90. As a result of Experian's willful violations of section 1681i(a)(1)(A), Plaintiff is entitled to actual damages pursuant to 15 U.S.C. section 1681n(a)(1), statutory damages of not less than $100 and not more than $1,000 per willful violation pursuant to 15 U.S.C. section 1681n(a)(1)(A), punitive damages pursuant to 15 U.S.C. section 1681n(a)(2), and

costs of this action pursuant to 15 U.S.C. section 1681n(a)(3). In the alternative, if any violation is found not to be willful, Plaintiff is entitled to actual damages and costs pursuant to 15 U.S.C. section 1681o.

**COUNT V**

**Violation of 15 U.S.C. Section 1681i(a)(5)(A)**

**Failure to Delete or Modify Unverifiable Information**

91. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

92. Section 1681i(a)(5)(A) requires that, if an item of information is found to be inaccurate, incomplete, or cannot be verified after a reinvestigation, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate.

93. The per se inaccurate balance figures identified in Paragraphs 23 through 37 above are, by their nature, internally contradictory and unverifiable: no amount owed on a revolving account can exceed the credit limit assigned to that account. These entries cannot be verified as accurate because they contradict basic account structure.

94. The dual-reporting entries identified in Paragraphs 41 through 49 above are similarly unverifiable as independent obligations because Experian's own data confirms that each original creditor sold the debt to the debt buyer. Both entries cannot simultaneously represent valid, independent obligations.

95. Despite completing reinvestigations of the accounts identified in Paragraph 50 above, Experian failed to delete or modify the inaccurate and unverifiable entries, in violation of section 1681i(a)(5)(A).

96. These violations were willful for the reasons set forth in Paragraphs 64 through 69 above.

97. As a result of Experian's willful violations of section 1681i(a)(5)(A), Plaintiff is entitled to actual damages pursuant to 15 U.S.C. section 1681n(a)(1), statutory damages of not less than $100 and not more than $1,000 per willful violation pursuant to 15 U.S.C. section 1681n(a)(1)(A), punitive damages pursuant to 15 U.S.C. section 1681n(a)(2), and costs of this action pursuant to 15 U.S.C. section 1681n(a)(3). In the alternative, if any violation is found not to be willful, Plaintiff is entitled to actual damages and costs pursuant to 15 U.S.C. section 1681o.

## COUNT VI

## Violation of 15 U.S.C. Section 1681i(c)

## Failure to Note Disputed Status in Subsequent Reports

98. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

99. Section 1681i(c) requires that whenever a consumer reporting agency receives notice of a dispute from a consumer under section 1681i(a), it shall, free of charge, note that the information is disputed by the consumer in any subsequent consumer report containing the information.

100. Plaintiff disputed multiple accounts. The Report contains dispute notations on certain accounts but, given the timing of reinvestigation completions and the subsequent hard

inquiry transmissions, Experian transmitted consumer reports to NORDSTROM/TD BANK USA on August 7, 2024, and to CAP ONE AUTO FIN VIA DEALER, CARMAX, EXETER FINANCE LLC/WCG, NOWCOM/WESTLAKE FINANCIA, and SANTANDER CONSUMER USA on June 5, 2023, in periods during which disputes were active, without ensuring that all disputed information was flagged in each transmitted report.

101. The failure to consistently note disputed status in reports transmitted to third parties while disputes remain pending violates section 1681i(c) and causes concrete harm to Plaintiff by allowing recipients to evaluate her creditworthiness based on disputed information without notice of the pending challenge.

102. These violations were willful for the reasons set forth in Paragraphs 64 through 69 above.

103. As a result of Experian's willful violations of section 1681i(c), Plaintiff is entitled to actual damages pursuant to 15 U.S.C. section 1681n(a)(1), statutory damages of not less than $100 and not more than $1,000 per willful violation pursuant to 15 U.S.C. section 1681n(a)(1)(A), punitive damages pursuant to 15 U.S.C. section 1681n(a)(2), and costs of this action pursuant to 15 U.S.C. section 1681n(a)(3). In the alternative, if any violation is found not to be willful, Plaintiff is entitled to actual damages and costs pursuant to 15 U.S.C. section 1681o.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mondy David respectfully requests that this Court enter judgment in her favor and against Defendant Experian Information Solutions, Inc., and award the following relief:

(a) Judgment for Plaintiff on all counts;

(b) Actual damages in an amount to be proven at trial, pursuant to 15 U.S.C. sections 1681n(a)(1) and 1681o(a)(1);

(c) Statutory damages of not less than $100 and not more than $1,000 per willful violation, pursuant to 15 U.S.C. section 1681n(a)(1)(A);

(d) Punitive damages pursuant to 15 U.S.C. section 1681n(a)(2), in an amount sufficient to deter Experian from continuing the practices described herein;

(e) Costs of this action pursuant to 15 U.S.C. sections 1681n(a)(3) and 1681o(a)(2);

(f) Injunctive relief requiring Experian to provide Plaintiff with a complete and corrected file disclosure that includes all data fields for all accounts, corrects all balance-exceeds-limit entries, and removes all dual-reporting entries arising from sold charged-off debts; and

(g) Such other and further relief as the Court deems just and proper.

Plaintiff reserves the right to amend this Complaint pursuant to FRCP Rule 15(a) to add reinvestigation counts under 15 U.S.C. section 1681i following expiration of the CRA's 30-day reinvestigation window as to any accounts not yet subject to a completed reinvestigation.

**DEMAND FOR JURY TRIAL**

Pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Mondy David

Mondy David

Pro Se Plaintiff

820 River Street

Mattapan, Massachusetts 02126

Phone: 617-894-1641

Email: Nikkiam.david@gmail.com

Date: 6/8/26